STATE OF NORTH CAROLINA v. JOSEPH EARL BATES

No. 145A91

(Filed 8 April 1993)

**Indigent Persons § 19 (NCI4th) — indigent defendant — assistance of forensic psychologist — right to ex parte hearing**

presence of the prosecutor, the trial court's error cannot be shown to be harmless beyond a reasonable doubt.

**Am Jur 2d, Criminal Law §§ 701, 714.**

Justice PARKER did not participate in the consideration or decision of this case.

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Rousseau, J., at the 25 February 1991 Special Criminal Session of Superior Court, Yadkin County, on a jury verdict finding defendant guilty of first-degree murder and first-degree kidnapping. On 15 April 1992 this Court allowed defendant's motion to bypass the Court of Appeals on the kidnapping conviction. Heard in the Supreme Court 6 October 1992.

*Lacy H. Thornburg, Attorney General, by David F. Hoke, Assistant Attorney General, for the State.*

*Malcolm R. Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant appellant.*

WHICHARD, Justice.

Defendant was tried capitally for murder in the first degree of Charlie Jenkins and, pursuant to the jury's unanimous recommendation, was sentenced to death for the murder. Defendant's pre-trial motion that his preliminary showing of need for funds to hire a mental health expert be heard *ex parte* was denied by the trial court. We hold, for reasons more fully articulated in *State v. Ballard*, 333 N.C. 515, 428 S.E.2d 178 (1993), that the trial court's ruling violated defendant's rights under the United States Constitution. As we held in *Ballard*, this error cannot be shown to have been harmless beyond a reasonable doubt. Defendant is accordingly entitled to a new trial.

On 31 August 1990, following advisement as to his constitutional rights, defendant gave a statement in which he admitted shooting the victim and throwing his hog-tied body into a river. The victim had approached defendant in the parking lot at a bar and asked for a ride home. Defendant had been living in a tent behind his boss's house since someone had broken into and fired into his house. Defendant believed his ex-wife and her boyfriend

were responsible for his harassment, and he thought the victim, who later admitted to defendant that he knew defendant's ex-wife, was setting him up and leading him into a trap.

On 29 November 1990 defendant filed a Motion for an *Ex Parte* Hearing at which he would apply for funds necessary to employ expert witnesses to aid in his defense. Defendant's Notice of Defense of Insanity and Intent to Introduce Expert Testimony Relating to Mental Disease, Defect or Condition was filed the next day.

At a pre-trial motions hearing held 18 December 1990, defendant moved orally for an *ex parte* hearing for funds necessary to employ expert witnesses to aid in his defense. The trial court denied defense counsel's specific request that the defense be permitted to present evidence supporting his motion for funds in an *ex parte* hearing. Defense counsel then tendered a Motion for Funds for Expert Assistance, to which he attached an affidavit by Dr. John Warren, a forensic psychologist. In the affidavit the psychologist concluded "that the defendant was probably psychologically disturbed to a significant degree," based on Dr. Warren's having been informed that at the time of the murder

> [defendant] had been suffering from extreme harassment by an individual or individuals which placed the defendant in such fear that he moved out of his home and into a tent in the woods, could not and did not sleep for a significant period of time, was later fired from his job because of the harassment and became obsessed with this fear for his life [and that] defendant . . . attempted suicide while incarcerated in the Yadkin County Jail.

In addition to Dr. Warren's affidavit, the motion was supported by defendant's testimony as to his depression, stress, and memory loss. Following her cross-examination of defendant, the prosecutor suggested to the trial court that defendant's motion "under all the circumstances, perhaps, . . . should be granted."

The trial court denied defendant's motion for his own expert, but allowed the State's motion that defendant be evaluated in response to defendant's notice of intent to rely on the defense of insanity. The trial court accordingly ordered that defendant be sent to Dorothea Dix Hospital for observation as to his capacity to proceed. The trial court's written order specifically stated that

defendant's being committed to Dorothea Dix Hospital was "for purposes of . . . evaluating his sanity at the time of the alleged offenses and determining his capacity to proceed to trial."

The resulting evaluation included findings that defendant was a heavy alcohol drinker with an IQ of 82 who feels uneasy in social situations and is possibly hypersensitive to criticism. The evaluation stated that defendant's memory was "intact with no obvious perceptual motor difficulties," his cognitive functioning represented no brain dysfunction or deterioration, and his personality showed "[n]o indications of mood thought disorder." The evaluating psychiatrist concluded that defendant did not have "a disorder that would prevent him from being capable of proceeding to trial or relieve him of responsibility for his actions."

At an open, pre-trial hearing held 16 January 1991, defense counsel again tendered a motion for the expert assistance of a psychologist. Defense counsel did not reiterate his request that the hearing be *ex parte*. The request was directed specifically at defendant's need for assistance with proof of the mitigating circumstances that the capital felony had been committed while defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2) (1988); the capacity of the defendant to appreciate the criminality of his conduct was impaired, N.C.G.S. § 15A-2000(f)(6) (1988); and the "catchall factor," N.C.G.S. § 15A-2000(f)(9) (1988). To this motion defense counsel attached the affidavit by Dr. Warren and an affidavit by defendant. The results of defendant's evaluation at Dorothea Dix Hospital were also before the court. The trial court again denied defendant's motion for expert assistance.

On 24 January 1991 the trial court filed its written order denying defendant's 29 November 1990 motion for an *ex parte* hearing and denying defendant's 18 December 1990 Motion for Funds for Expert Assistance.

Defendant's petitions for *certiorari* and *supersedeas* and his motion for a temporary stay, filed with this Court 25 January 1991, cited both the trial court's failure to allow defendant's motion for expert assistance to be heard *ex parte* and its denial of the motion itself as subjects of the requested review. This Court denied defendant's petitions on 7 February 1991.

STATE v. BATES

[333 N.C. 523 (1993)]

Defendant thus proceeded to trial without the assistance of a psychologist. The jury found him guilty of first-degree kidnapping and of first-degree murder on the bases of both premeditation and deliberation and felony murder. At sentencing the jury found the aggravating circumstances that the murder had been committed while defendant was engaged in the commission of a kidnapping and that it had been especially heinous, atrocious or cruel. Among the circumstances in mitigation the jury found that the murder had been committed while defendant was under the influence of mental or emotional disturbance, but it did not find that the capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law had been impaired. After weighing the mitigating and aggravating circumstances it had found, the jury recommended that defendant be sentenced to death.

We held in *State v. Ballard* that it is error to deny the motion of an indigent defendant for an *ex parte* hearing regarding his request for the assistance of a psychiatrist. We reasoned that the risk of exposing the defendant's insanity or related defense strategy to the State and the associated risks of self-incrimination and encroachment upon the defendant's right to the effective assistance of counsel jeopardize the defendant's rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *Ballard*, 333 N.C. at 519, 428 S.E.2d at 180.

Here, defendant sought the assistance of a forensic psychologist rather than a psychiatrist, but this is a distinction without a difference with regard to a defendant's entitlement to an *ex parte* hearing on the issue of expert assistance regarding an insanity defense. Both psychologists and psychiatrists are trained to recognize and treat mental illness. Their training and expertise, and the fact that the subject of their study cannot be mechanically assessed, distinguishes them materially from such experts in physical evidence as fingerprint analysts. *See State v. Moore*, 321 N.C. 327, 348-49, 364 S.E.2d 648, 659 (1988) (Mitchell, J., concurring). But their training, expertise, and subject of study does not significantly differentiate one from the other with regard to the ability of each to assist in an insanity defense.

It is impossible for this Court to know what additional evidence defendant might have proffered in support of his motion had he been able to do so out of the presence of the prosecutor. For

this reason, the trial court's error in denying the request for an *ex parte* hearing on his motion for a psychiatrist or psychologist cannot be shown to be harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1988). *See State v. Ballard*, 333 N.C. at 523, 428 S.E.2d at 183. Defendant thus is entitled to a new trial.

We do not address defendant's remaining assignments of error, as they will not likely recur on retrial.

NEW TRIAL.

Justice PARKER did not participate in the consideration or decision of this case.