Jack Gordon GREENE *v.* STATE of Arkansas

CR 96-362                                             941 S.W.2d 428

Supreme Court of Arkansas
Opinion delivered April 21, 1997

*William M. Pearson,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Kent G. Holt,* Asst. Att'y Gen., for appellee.

PER CURIAM. Jack Gordon Greene was convicted of capital murder and sentenced to death. He moved to dismiss the appeal. We denied the motion because we deemed it equivocal. *Greene v. State,* 326 Ark. 179, 929 S.W.2d 147 (1996). Mr. Greene filed a second motion that we deemed unequivocal. Therefore, in an opinion issued on December 9, 1996, we remanded the case to the Trial Court to determine whether Mr. Greene was competent to waive his appeal. *Greene v. State,* 326 Ark. 822, 933 S.W.2d 392 (1996).

Although the latter order did not require the Trial Court to order a psychological examination to determine Mr. Greene's competency to make the choice between life and death, the Trial Court did so on December 16, 1996. The order provided, in relevant part, as follows:

> In order to insure that the Defendant has the capacity to understand the choice between life and death and to knowingly and intelligently waive any and all rights to appeal his sentence, the Court does hereby order that the Defendant shall be examined by qualified personnel from the Arkansas State Hospital in order to evaluate his ability to understand the choice between life and death and to knowingly waive any and all rights to appeal his sentence.

The psychological examination did not take place. A hearing was held by the Trial Court on January 10, 1997. At the hearing, extensive dialog occurred between Mr. Greene and the Trial Court. An order was entered by the Trial Court to the effect that Mr. Greene understood the choice he was making and was competent to waive his appeal.

A transcript of the hearing was filed with this Court. Upon review of the transcript, we noted the following colloquy between the Trial Court and Mr. Greene:

> BY MR. GREENE: There's something I'd like to bring up though, Your Honor. The last time I had a visit with this attor-

ney here of mine, he came down to Tucker Max and asked at your request that I be interviewed by a panel of psychologists there at the prison. Would you mind explaining to me what that was about?

BY THE COURT: The last time?

BY MR. GREENE: The last time.

BY THE COURT: Well, that was basically pursuant to the order of the Supreme Court on the motion that was filed down there that you be examined again and this Court hold another competency hearing to see if you want to waive your appeal. We were just following that directive; and it's my understanding that you didn't want to have any other examination and they ceased and that's just kind of a standard practice that's followed when competency is going to be a question.

BY MR. GREENE: Well, like I mentioned to Mr. Pearson here, since I've been on death row, and even before, I have several court orders signed by you that I was supposed to be transferred to the State Hospital for no longer than a period of thirty days for a psychological evaluation. I have at least three of them that I know of and I have still yet to be transferred to the State Hospital; but I thought I found it very unusual for my attorney to just pop up to visit me and say that he wishes that I would meet an independent panel and not the ones that interviewed me before, but an independent panel of psychologists to see if I'm competent to be doing what I'm doing. [Transcript, pp. 28-29.]

From that discussion, and particularly the statement of the Trial Court that the examination in question was in response to the order to determine whether Mr. Greene had the mental capacity to waive his appeal, we concluded that an unsuccessful attempt had been made by State Hospital personnel to examine Mr. Greene at the prison.

After reviewing the transcript of the January 10 hearing, we concluded that the psychological examination should occur, and we said so in a *per curiam* order of March 3, 1997. *Greene v. State*, 327 Ark. 511, 939 S.W.2d 834 (1997). We noted that the Trial Court had ordered such an examination and that it was correct to have done so. We again remanded the case to the Trial Court "so that an evaluation may be done by State Hospital personnel to

determine Mr. Greene's mental capacity to understand his choice between life or death and to resolve it knowingly and voluntarily. A further hearing is then to be held by the Trial Court to decide the issue." *Greene v. State*, 327 Ark. at 513.

In response to our March 3 order, the Trial Court held another hearing. Mr. Greene testified that he recalled that the Trial Court had ordered a mental evaluation of him to determine his competency to waive his appeal but that he had not been examined and that State Hospital personnel had not visited him at the prison for that purpose.

With the permission of the Trial Court, Mr. Greene read a passage from the report of an evaluation of him by the State Hospital which took place in 1995 for the purpose of determining if he was "death penalty eligible." The report concluded that Mr. Greene was competent to proceed in a resentencing hearing and had the mental state to be death-penalty eligible. As we pointed out in our order of March 3, 1997, the issue is different when the question is whether a party is competent to waive an appeal from a death sentence. *Id.* at 512-13.

In further discussion with counsel and with the Trial Court, Mr. Greene made it clear that he would not cooperate with any attempt on the part of State Hospital personnel to conduct an evaluation as ordered by the Court. The Trial Court recognized the futility in again ordering an evaluation of Mr. Greene. There was a long discussion in which Mr. Greene leveled considerable criticism (amply sprinkled with profanity) toward prison personnel, State Hospital personnel, and ultimately this Court. The Trial Court concluded that there was no requirement that the evaluation take place and that, if Mr. Greene had a right to such an evaluation, he had waived it and was competent to waive his right to appeal.

In these circumstances, we continue to agree with the Trial Court's apparent initial conclusion that an evaluation by trained psychological examiners of Mr. Greene to determine his capacity to waive his appeal was necessary. As Mr. Greene has refused to cooperate in any such examination, and says he will continue to refuse, we deny his motion to dismiss his appeal.

The stay of execution will remain effective. The Clerk of this Court will establish the briefing schedule for the appeal.

Motion denied.